**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 13-cr-134 |
| ALFREDO MOSQUERA-MURILLO, JOAQUIN CHANG-RENDON, and ANTONIO MORENO-MEMBACHE, | Judge Beryl A. Howell |
| Defendants. | |

<u>**MEMORANDUM OPINION**</u>

On January 20, 2016, each of the defendants entered into a wired plea agreement under which they pleaded guilty to a one-count indictment of conspiring to distribute, and possess with intent to distribute, at least five kilograms of cocaine and 100 kilograms of marijuana on board a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503(a) and 70506(b).  *See* Plea Agreements, ECF Nos. 185, 188, 191.  Based on the quantity of drugs involved in the charged conspiracy, the defendants' offense under the MLDEA carries a mandatory-minimum sentence of ten years of incarceration, *see* 46 U.S.C. § 70506(a); 21 U.S.C. § 960(b)(1)(B), and the parties have recommended, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), a sentence at this statutory minimum for each of the defendants, *see* Plea Agreements ¶ 6.  In so doing, however, the defendants have retained their right to argue that they are eligible for relief from this mandatory-minimum under the "safety-valve" provision of the Mandatory Minimum Sentencing Reform Act of 1994, 18 U.S.C. § 3553(f).  The government contends that the defendants are not eligible for such safety-valve relief because § 3553(f) does not apply to convictions under the MDLEA.  Upon consideration of the parties' thorough submissions on this issue, and for the

following reasons, the Court concludes that safety-valve relief is unavailable for defendants

convicted under the substantive and conspiracy provisions of the MDLEA.

## I.       BACKGROUND

The relevant factual background underlying the defendants' convictions is summarized in

detail in this Court's prior opinion resolving the parties' various pretrial motions in this matter.

*See United States v. Mosquera-Murillo*, No. 13-CR-134, 2015 WL 9907796, at *2–4 (D.D.C.

Dec. 14, 2015).  After resolution of these motions, the defendants each agreed to plead guilty to a

single count of conspiring to violate the MDLEA in connection with their participation in an

effort to transport at least five kilograms of cocaine and 100 kilograms of marijuana aboard a go-

fast vessel that was interdicted by the U.S. Coast Guard on June 19, 2012.  *See* Minute Entry,

dated Jan. 20, 2016.  Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the

defendants' plea agreements recommend imposition of a sentence of ten years imprisonment, *see*

*id.*, which is the mandatory-minimum sentence applicable to the defendants' offense of

conviction, *see* 46 U.S.C. § 70506(a); 21 U.S.C. § 960(b)(1)(B).  Nonetheless, the plea

agreements further provide that the defendants are each permitted to attempt to demonstrate their

eligibility for a sentence below this otherwise applicable statutory minimum based on the factual

criteria set out at 18 U.S.C. § 3553(f) (the "safety-valve provision").  Plea Agreements ¶ 9.

The defendants are scheduled to be sentenced on May 13, 2016.  Notice of Rescheduled

Hearing, dated Feb. 23, 2016.  The parties proposed, and the Court granted, a bifurcated briefing

schedule under which the Court would determine, first, whether defendants convicted under the

MDLEA are legally eligible for safety-valve relief, before the filing of sentencing memoranda in

connection with the defendants' scheduled sentencings.  *See* Consent Mot. Bifurcate Sentencing

Hearing, ECF No. 195; Minute Order, dated Feb. 16, 2016.[1]  Consistent with the parties'

proposed briefing schedule, this preliminary legal issue is now ripe for consideration.

## II.    DISCUSSION

While the question whether a defendant subject to a mandatory-minimum sentence due to

a conviction under the MDLEA is eligible for relief under the safety-valve provision of 18

U.S.C. § 3553(f) is an issue of first impression in this Circuit, the Court does not write on an

entirely blank slate.  Indeed, arguing that safety-valve relief is not available to MDLEA

defendants, the government notes that both circuits to have considered the issue concluded that

such defendants are categorically precluded from seeking such relief.  Gov't Sub. on App. of

Safety Valve to MDLEA ("Gov't Mem.") at 3 (citing *United States v. Pertuz-Pertuz*, 679 F.3d

1327, 1329 (11th Cir. 2012) (per curiam); *United States v. Gamboa-Cardenas*, 508 F.3d 491, 496

(9th Cir. 2007)), ECF No. 196.

Consistent with the reasoning adopted by these circuits, the government argues that both

the plain language of the safety-valve provision and the legislative history accompanying its

enactment confirm that safety-valve relief is unavailable to MDLEA defendants.  *See generally*

*id.*  In response, the defendants contend that the "text, history, and purpose" of the safety-valve

provision demonstrate their eligibility for a sentence below the statutory minimum and that any

ambiguity in the language of the provision should be resolved in favor of granting such relief.

Mem. Supp. Def. Chang-Rendon's Legal Eligibility for Safety-Valve Relief ("Chang-Rendon

---

[1]    In connection with their proposed briefing schedule, the parties requested an oral hearing on the issue of the applicability of the safety-valve provision to convictions under the MDLEA.  Consent Mot. Bifurcate Sentencing Hearing at 3.  Given the sufficiency of the parties' written submissions, however, such a hearing would be unnecessary and duplicative, and the parties request for such a hearing is therefore denied.  *See* LCvR 7(f) (stating allowance of oral hearing is "within the discretion of the court").

Mem.") at 1, ECF No. 197.[2]  Following a summary of the statutory framework underlying the

present dispute, the parties' arguments are considered below.

### A.       Relevant Statutory Framework

The safety-valve provision permits a district court to impose a sentence below the

statutory mandatory-minimum where a defendant convicted of an offense under certain federal

criminal offenses meets five enumerated criteria.[3]  The statute sets out the specific offenses of

conviction to which the safety-valve is available, providing, in pertinent part, that:

> Notwithstanding any other provision of law, in the case of an offense under section
> 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or
> section 1010 or 1013 of the Controlled Substances Import and Export Act (21
> U.S.C. 960, 963), the court shall impose a sentence . . . without regard to any
> statutory minimum sentence . . . .

18 U.S.C. § 3553(f).

Congress passed the safety-valve provision to provide sentencing relief for low-level

offenders who, because of their relatively limited role in the offenses for which they were

convicted, were often unable to provide the level of substantial assistance necessary to qualify

for a departure below an applicable mandatory-minimum sentence.  As the D.C. Circuit has

---

[2]      Defendants Moreno-Membache and Mosquera-Murillo each have adopted the opening memorandum
submitted by their co-defendant.  *See* Minute Orders, dated Feb. 29, 2016, March 3, 2016.  Since the legal question
of the applicability of the safety-valve provision to offenses under the MDLEA does not turn on the particular
circumstances of an individual MLDEA offense, the discussion that follows addresses the defendants' legal
eligibility for safety-valve relief without regard to any potential factual distinctions between the defendants'
respective roles in the charged conspiracy.
[3]      The five pre-requisites for application of the safety-valve to defendants otherwise eligible due to their
offense of conviction are: "(1) the defendant does not have more than 1 criminal history point, as determined under
the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm
or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense
did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader,
manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged
in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than
the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and
evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a
common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that
the Government is already aware of the information shall not preclude a determination by the court that the
defendant has complied with this requirement."  18 U.S.C. § 3553(f).  This language has been incorporated *verbatim*
into the U.S. Sentencing Guidelines.  *See* U.S.S.G. § 5C1.2.

explained, "[p]rior to enactment of the safety valve provision, 'defendants convicted of certain drug crimes could receive a sentence below the statutory minimum only on the Government's motion to depart downward based on a defendant's substantial assistance to the authorities.' Congress enacted the safety valve provision in order to provide similar sentencing relief to lower level offenders who were willing to cooperate with the government but did not possess information of substantial assistance." *United States v. Gales*, 603 F.3d 49, 52 (D.C. Cir. 2010) (quoting *United States v. Shrestha*, 86 F.3d 935, 938 (9th Cir. 1996)).

In this case, each defendant stands convicted of conspiring to violate the MDLEA, which generally prohibits narcotics trafficking on the high seas. Specifically, the MDLEA prohibits knowingly or intentionally "manufactur[ing] or distribut[ing], or possess[ing] with intent to manufacture or distribute, a controlled substance" on board a "vessel of the United States or a vessel subject to the jurisdiction of the United States," or "any vessel if the individual is a citizen of the United States or a resident alien of the United States." 46 U.S.C. § 70503(a). While the MDLEA thus identifies the conduct prohibited under the statute, the MDLEA itself does not specify a penalty for violating its substantive terms. Instead, the MDLEA provides that individuals who violate, or attempt or conspire to violate, the MDLEA "shall be punished as provided in section 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 960)." 46 U.S.C. §§ 70506(a), (b).

In relevant part, 21 U.S.C. § 960 provides statutory penalties for a variety of offenses associated with the import and export of controlled substances. This general penalty provision follows a bipartite structure. First, subsection (a) provides:

Any person who—

(1) contrary to section 825, 952, 953, or 957 of this title, knowingly or intentionally imports or exports a controlled substance,

(2) contrary to section 955 of this title, knowingly or intentionally brings or possesses on board a vessel, aircraft, or vehicle a controlled substance, or

(3) contrary to section 959 of this title, manufactures, possesses with intent to distribute, or distributes a controlled substance,

shall be punished as provided in subsection (b) of this section.

21 U.S.C. § 960(a). Next, subsection (b) sets out a series of escalating penalties based on the kind and quantity of drugs involved in the predicate offense. *Id.* § 960(b). As relevant here, for larger quantities of illicit drugs, this subsection provides for a mandatory-minimum sentence of five or ten years. *Id.* § 960(b)(1), (2). Under these subsections, due to the quantity of narcotics the government is prepared to prove the defendants could have reasonably foreseen to have been involved in the charged conspiracy, namely, 450 kilograms of cocaine and 100 kilograms of marijuana, *see* Joint Statements of Fact ¶ 7, ECF Nos. 186, 189; Joint Statement of Stipulated Facts ¶ 6, ECF No. 192, and absent relief under the safety-valve provision, each defendant agrees that he faces a mandatory-minimum statutory penalty of ten years imprisonment, *see* Plea Agreements ¶ 4. Should the defendants qualify, both legally and factually, for safety-valve relief, however, the Court may sentence the defendants to a term of imprisonment below this mandatory-minimum. Chang-Rendon Mem. at 2.[4]

---

[4]    The parties have indicated that, should the Court rule that the safety-valve applies to MDLEA offenses, they "anticipate devoting substantial time to developing their presentations regarding whether the [d]efendants are eligible for relief under the Safety Valve as a factual matter." Consent Mot. Bifurcate Sentencing Hearing at 2. In particular, "the [g]overnment would likely call numerous witnesses, including some who would travel from Colombia, to testify about the [d]efendants' alleged conduct in the charged conspiracy and other conspiracies." *Id.* Given the substantial resources such an effort likely would demand, the Court granted the parties' request to resolve the threshold question of the defendants' legal eligibility for safety-valve relief before considering whether the defendants meet each of the factual criteria identified in 18 U.S.C. § 3553(f), *see supra* note 3. *See* Minute Order, dated Feb. 16, 2016.

**B.      Defendants Convicted under the MLDEA are not Eligible for Safety-Valve Relief under 18 U.S.C. § 3553(f)**

Under the statutory framework described above, the present dispute boils down to a relatively narrow question of statutory interpretation.  By its terms, the safety-valve provision allows for a below-minimum sentence only "in the case of an offense under" certain enumerated federal drug crimes.  Based upon the clear text in 18 U.S.C. § 3553(f), these enumerated statutes—21 U.S.C. §§ 841, 844, 846, 960 and 963—have been interpreted to be an exhaustive list.  *See*, *e.g.*, *United States v. Phillips*, 382 F.3d 489, 499 (5th Cir. 2004); *United States v. Koons*, 300 F.3d 985, 993 (8th Cir. 2002); *United States v. Anderson*, 200 F.3d 1344, 1348 (11th Cir. 2000); *United States v. McQuilkin*, 78 F.3d 105, 108 (3d Cir. 1996).  On its face, the safety-valve provision therefore provides no relief to defendants convicted under the MDLEA, which is codified at 46 U.S.C. §§ 70501–70508 and does not appear among the eligible statutes.

This apparent exclusion notwithstanding, however, the defendants contend that individuals who, like them, are convicted under MDLEA are eligible for safety-valve sentencing relief under § 3553(f) on the theory that, because violations of the MDLEA are punished in accordance with the penalties set out in 21 U.S.C. § 960(b), an offense under the MDLEA qualifies as an "offense under . . . § 960."  18 U.S.C. § 3553(f).  Consequently, to determine whether the defendants are eligible for safety-valve relief, the Court must consider whether a conviction under the MDLEA qualifies as an "offense under" 21 U.S.C. § 960 within the meaning of § 3553(f).  Chang-Rendon Mem. at 5; Gov't Mem. at 2.

While the D.C. Circuit has not had occasion to consider the defendants' proposed construction of this statutory phrase, the parties agree that those circuits that have considered the issue have uniformly held that safety-valve relief is precluded for defendants convicted under the MDLEA.  Gov't Mem. at 3; Chang-Rendon Mem. at 7.  The defendants strongly critique the

7

reasoning of those opinions, however, to contend that the "text, statutory history, and purpose of"
the relevant statutory provisions make clear that Congress intended MDLEA defendants to be
eligible for safety-valve relief.

To resolve this dispute, the Court's task of construing the relevant statutory provisions
must begin with the "statutory text itself." *United States v. Cano-Flores*, 796 F.3d 83, 91 (D.C.
Cir. 2015). Accordingly, the discussion that follows considers, first, the defendants' argument
that the plain language of both the safety-valve provision and the MDLEA itself suggest that
Congress intended for qualifying MDLEA defendants to be eligible for a below-minimum
sentence under the safety-valve provision. Following this statutory analysis, the defendants'
contentions that construction of the safety-valve provision to preclude relief in MDLEA cases
would lead to "glaringly absurd" results and would otherwise be in conflict with the Supreme
Court's recent holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), are each considered in
turn.

1.    ***The Plain Language of 18 U.S.C. § 3553(f) Precludes Safety-Valve
      Relief for MDLEA Defendants***

The defendants argue first that the plain language of both the safety-valve provision and
the MDLEA points to safety-valve eligibility for MDLEA defendants. Specifically, the
defendants contend that the phrase "an offense under . . . § 960" must be interpreted to
encompass those offenses "subject to" or "governed by" § 960. Chang-Rendon Mem. at 5.
Likewise, construing the MDLEA's penalty provision, the defendants suggest that punishments for
violations of the MDLEA must be "*the same as*" those imposed under § 960, which necessarily
includes potential safety-valve relief. *Id.* at 6 (emphasis in original).

To assess the defendants' proposed construction of these provisions, the Court must
consider first whether the "language at issue has a plain and unambiguous meaning with regard

to the particular dispute in [this] case." *United States v. Villanueva–Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)). If such an unambiguous meaning is apparent, the court's "inquiry ends and [the court must] apply the statute's plain language." *Id.* (internal quotations and citations omitted); *see also United States v. Cordova*, 806 F.3d 1085, 1099 (D.C. Cir. 2015) ("In determining the 'plainness or ambiguity of statutory language' we refer to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" (quoting *United States v. Wilson*, 290 F.3d 347, 353 (D.C. Cir. 2002))). Where, however, "the statutory language is ambiguous, [the court must] look beyond the text for other indicia of congressional intent." *Villanueva–Sotelo*, 515 F.3d at 1237 (citing *Staples v. United States*, 511 U.S. 600, 605 (1994)). In so doing, the Court is mindful that "[t]he rule of lenity prevents the interpretation of a federal criminal statute 'so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'" *United States v. Burwell*, 690 F.3d 500, 515 (D.C. Cir. 2012) (quoting *Villanueva–Sotelo,* 515 F.3d at 1246). Nonetheless, "'[t]he simple existence of some statutory ambiguity . . . is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree.'" *Burwell*, 690 F.3d at 515 (ellipsis in original) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)). Accordingly, "to invoke the rule of lenity, a court must conclude that 'there is a *grievous* ambiguity or uncertainty in the statute.'" *Id.* (emphasis in original).

Turning first to the defendants' construction of the language of the safety-valve provision itself, the defendants contend that, by affording safety-valve relief "in the case of an offense under . . . § 960," Congress intended to provide such relief to defendants convicted of *any* offense punished in accordance with the mandatory-minimum penalties set out in § 960(b). In

9

support of their preferred interpretation, the defendants rely principally on the Supreme Court's

construction of similar language appearing in a separate, unrelated statute in *Ardestani v. I.N.S.,*

502 U.S. 129, 135 (1991).  *Id.*  The Court's analysis in that case, however, provides scant support

for the defendants' proposed construction of the language at issue here.

   *Ardestani* addressed the availability of attorneys' fees under the Equal Access to Justice

Act ("EAJA") for prevailing parties in administrative deportation proceedings brought by the

Immigration and Naturalization Service.  502 U.S. at 131.  The EAJA provides for fee-shifting

for prevailing parties in "adversary adjudications" before a federal agency, with the statute

defining such proceedings as "an adjudication under section 554 of [the APA] in which the

position of the United States is represented by counsel or otherwise."  *Id.* at 132 (citing 5 U.S.C.

§ 504(b)(1)(C)(i)).  Though the deportation proceedings at issue in *Ardestani* were, by statute,

explicitly exempted from the APA, *id.* at 133, the plaintiff argued that these proceedings were

sufficiently *similar* to APA adjudications to conclude that Congress intended these proceedings

to qualify as adjudications "under section 554 of [the APA]," *id.* at 134–35 (explaining that the

plaintiff argued that "the phrase 'under section 554' encompasses all adjudications 'as defined

in' § 554(a), even if they are not governed by the procedural provisions established in the

remainder of that section").

   The Supreme Court disagreed.  Instead, concluding that the meaning of "an adjudication

under section 554" was unambiguous in the context of the EAJA, the Court noted that the word

"'under' has many dictionary definitions and must draw its meaning from its context."  *Id.* at

135.  In the context of the EAJA, the *Ardestani* Court observed that the "most natural reading of .

. . 'under section 554' is that those proceedings must be 'subject to' or 'governed by' § 554."  *Id.*

Under this meaning, because the deportation proceedings at issue were not subject to or

governed by the APA, the Court held that these proceedings did not fall within the category of proceedings for which the EAJA waived sovereign immunity and authorized fee-shifting. *Id.* at 138. Reading *Ardestani* to hold merely that the "phrase '*under*' a statutory section means 'governed by' or 'subject to' that statutory section," the defendant's contend that the defendants' convictions under the MDLEA are plainly governed by the mandatory-minimum penalty imposed under § 960. Chang-Rendon Mem. at 5.

As the foregoing summary suggests, however, the defendants' reliance on the Supreme Court's interpretation of the word "under" in *Ardestani* is misplaced. First, such a reading ignores the *Ardestani* Court's admonition that the word "under" is amenable to many meanings and must therefore be interpreted in the context in which it appears. *Ardestani*, 502 U.S. at 135. Such a contextual analysis is inconsistent with the defendants' present suggestion that *Ardestani* provides a fixed definition of the word "under" regardless of the particular statute or provision the Court is attempting to construe. Chang-Rendon Mem. at 5. In this sense, while *Ardestani* may provide guidance as to the interpretation of the word "under" in the context of a civil fee-shifting provision, the Court's analysis provides little clear guidance regarding the meaning of this word in the very different context of a criminal sentencing statute. Moreover, the *Ardestani* Court's holding that deportation proceedings, though demonstrating certain key similarities to APA adjudications, are not subject to fee-shifting under the EAJA is difficult to square with the defendants' current request for safety-valve relief. Just as the proceedings at issue in *Ardestani* were functionally similar to APA adjudications, the defendants' convictions under the MDLEA are subject to the same punishment as the statutes listed in § 960(a). Thus, instead of suggesting that "under" must be interpreted consistently across differing statutory regimes, *Ardestani* provides some support for the conclusion that, notwithstanding the obvious similarities between

punishments meted out for MDLEA offenses and those offenses specifically enumerated under §

960(a), MDLEA offenses need not qualify as cases "under . . . § 960."

Likewise, the defendants' contention that the safety-valve provision must be interpreted

to encompass those offenses punished in accordance with § 960(b) is similarly unpersuasive.

Arguing that the MDLEA qualifies as an offense "under . . . § 960," the defendants note that,

unlike the other statutes listed under the safety-valve provision, *i.e.*, 21 U.S.C. §§ 841, 844, 846,

and 963, § 960 does not itself define an offense subject to a mandatory minimum.  Chang-

Rendon Mem. at 5.  Since § 960 does not itself define a federal crime, but instead merely sets out

the punishment for violating *other* federal crimes elsewhere defined, the defendants suggest that

the only "coherent" reading of the phrase "an offense under . . . § 960" is "an offense for which

subsection (b) of § 960 sets out the applicable punishment."  *Id.*  Thus, because the penalties for

violating the substantive and conspiracy provisions of the MDLEA are found in § 960(b), the

defendants assert that the MDLEA clearly qualifies as an "offense under" § 960 to which the

safety-valve indisputably applies.

At first blush, this argument appears to have some merit, but the Ninth Circuit's

discussion of this precise issue in *United States v. Gamboa-Cardenas*, 508 F.3d 491 (9th Cir.

2007), is particularly instructive.[5]  In that case, despite the defendants' suggestion to the

contrary, Def.'s Mem. at 7, the court explicitly acknowledged that "§ 960 does not describe an

*offense* itself, but rather prescribes the *penalty* for a number of drug offenses prohibited by other

statutes."  *Id.* at 497 (emphasis in original).  Reviewing the text of § 3553(f), however, the Ninth

Circuit concluded that the statute's "reference to 'an offense under . . . 21 U.S.C. § 960' invokes

---

[5]     The Ninth Circuit considered the applicability of the safety-valve provision to the MLDEA's predecessor
statute, which was subsequently reenacted without relevant changes and has since been codified as it currently
appears in Title 46.  *United States v. Gamboa-Cardenas*, 508 F.3d 491, 507 n.1 (9th Cir. 2007).

only the statutes listed in 21 U.S.C. § 960(a), and thus the safety valve . . . applies to offenses committed in violation of 21 U.S.C. §§ 952, 953, 955, 957 and 959." *Id.* Since these statues are explicitly listed in § 960(a), the Ninth Circuit reasoned, they are properly regarded as offenses "under . . . § 960." *Id.* Further, because the MDLEA was enacted nearly a decade before Congress passed the safety-valve provision, the *Gamboa-Cardenas* Court presumed that the failure to explicitly *include* the MDLEA among the statutes to which the safety-valve applies manifests Congress's intent to *exclude* safety-valve relief for MDLEA defendants. *Id.* 497–98 ("Congress could have included [the MDLEA] as easily as it included the other statutes specifically listed in § 3553(f). The timing of Congress's actions indicates that it consciously chose not to include [MDLEA] offenses on the safety valve list.").

The Eleventh Circuit has agreed with the reasoning of the Ninth Circuit. In *United States v. Pertuz-Pertuz*, 679 F.3d 1327, 1329 (11th Cir. 2012) (per curiam), the court held that "[a]lthough 46 U.S.C. § 70506(a) references section 960 as the penalty provision for violations of 46 U.S.C. § 70503, section 960 does not incorporate section 70503 by reference as an 'offense under' section 960." Thus, the Eleventh Circuit held that the "plain text of the statutes shows that convictions under Title 46 of the U.S. Code . . . entitle a defendant to no safety-valve sentencing relief." *Id.*; *see also United States v. Morales*, 535 F. App'x 781, 782 (11th Cir. 2013).

These out-of-circuit decisions notwithstanding, the defendants seek to bolster their proposed interpretation by arguing that the plain language of the MDLEA itself confirms that qualifying defendants convicted of offenses arising under that statute should, like their counterparts convicted of other offenses subject to mandatory minimums set out under § 960(b), be eligible for safety-valve relief. According to the defendants, because the MDLEA's penalty

provision states that offenses under the statute must be "punished as provided in section . . . 960," Congress "mandated that punishments for violations under [the MDLEA] must be *the same as* punishments set out by § 960." Chang-Rendon Mem. at 6 (emphasis in original). Since defendants convicted under one of the statutes listed in § 960(a) are entitled to safety-valve relief, the defendants argue, treating MDLEA defendants "*the same as*" those convicted under one of these listed statutes requires "punishment doled out for drug trafficking on the high seas . . . to include safety-valve eligibility as well." *Id.* at 7. While recognizing that both the *Gamboa-Cardenas* and *Pertuz-Pertuz* Courts specifically rejected this interpretation of the MDLEA, the defendants note that at least one district judge, as well as a concurring judge on the *Gamboa-Cardenas* panel adopted this construction of the statute. *Id.* (citing *United States v. Olave-Valencia*, 371 F. Supp. 2d 1224, 1227 (S.D. Cal. 2005); *Gamboa-Cardenas*, 508 F.3d at 506–08 (Fisher, J., concurring in part and dissenting in part)). Confronted with these differing statutory interpretations, the defendants urge this Court to join these latter judges in concluding that the MDLEA evinces clear Congressional intent to afford MDLEA defendants an opportunity to obtain safety-valve relief.

Review of these authorities does not disturb the Court's view that the plain language of the MDLEA and 18 U.S.C. § 3553(f) unambiguously foreclose safety-valve relief for defendants convicted under the substantive or conspiracy provision of MDLEA. As an initial matter, though the defendants ask this Court to follow the district court's holding in *Olave-Valencia*, 371 F. Supp. 2d 1224, the Ninth Circuit specifically rejected that holding in *Gamboa-Cardenas,* 508 F.3d at 501–02. In so doing, the *Gamboa-Cardenas* Court explained that the lower court's reasoning rested on a misinterpretation of the distinction between the MDLEA and a similar

14

statute prohibiting possession of narcotics in U.S. customs waters.  *Id.*[6]  Further, while the concurring opinion in *Gamboa-Cardenas* concluded that the "most plausible" reading of the relevant provisions would permit MDLEA defendants to seek safety valve relief, this conclusion was predicated on the finding, contrary to the majority holding and the view of this Court, that the "statutory language is ambiguous as to whether [MDLEA] offenses are eligible for safety valve relief."  *Gamboa-Cardenas*, 508 F.3d at 506–08 (Fisher, J., concurring in part and dissenting in part)).

In sum, the plain language of the MDLEA and the safety-valve provision are not so ambiguous as to allow for an interpretation under which the MLDEA constitutes an "offense under . . . § 960."  Even assuming *arguendo* that the interpretation urged by the defendants is plausible based on the statutory text alone, however, the legislative history accompanying the enactment of the relevant generally supports the conclusion reached here, consistent with the holdings of both the Ninth and Eleventh Circuits, that safety-valve relief is precluded in this case.  The most salient aspects of this legislative history are addressed below.

### 2.   *Relevant Legislative History Further Evidences Congressional Intent to Preclude Safety-Valve Relief for MDLEA Offenses*

For nearly a century, Congress has sought to combat the importation of illicit drugs by subjecting drug traffickers, whose activities on the high seas bring them within the jurisdiction of the United States, to stringent criminal penalties.  First, in 1922, Congress prohibited domestic trafficking of illicit drugs by making it "unlawful to import or bring any narcotic drug into the United States or any territory under its control."  *Gamboa-Cardenas*, 508 F.3d at 500 (citing Act of May 26, 1922, ch. 202, § 1, 42 Stat. 596 (repealed 1970)).  Some twenty years later, in 1941,

---

[6]      The overlapping and somewhat confused legislative history associated with the passage of these statutes is described in greater detail below, *infra* Part II.B.2.

Congress expanded this prohibition to include possession, on a vessel subject to United States jurisdiction, of illegal drugs on the high seas. *Id.* (citing Act of July 11, 1941 ("1941 Act"), ch. 289, § 1, 55 Stat. 584 (initially codified at 21 U.S.C. § 184a) (repealed 1970)).  As originally enacted, these statutes provided for harsher maximum penalties for defendants convicted of importation than those possessing narcotics in international waters. *Id.*  "By 1956, [however,] drug possession on board vessels within the territorial waters of the United States was subject to the same penalties as possession on board a vessel in the high seas." *Id.* (citing *Olave-Valencia,* 371 F. Supp. 2d at 1227).

In 1970, Congress passed the Comprehensive Drug Abuse Prevention and Control Act ("Comprehensive Act"), Pub. L. No. 91-513, 84 Stat. 1292 (1970), with the goal of streamlining existing laws pertaining to the importation or exportation of illicit drugs. *Id.*  To do so, Congress repealed and replaced nearly all criminal statutes targeting international drug trafficking. *Id.*  As a part of this comprehensive legislation, Congress enacted 21 U.S.C. § 955, which covers the same offenses previously proscribed under the original 1922 statute. *Id.*; *see* 21 U.S.C. § 955 (generally prohibiting "bring[ing] or possess[ing] on board any vessel or aircraft, or on board any vehicle of a carrier, arriving in or departing from the United States or the customs territory of the United States, a controlled substance").  Also included in this omnibus legislation was § 960, which provided for a common set of penalties for a number of the substantive offenses newly reenacted through the Comprehensive Act.  Among these offenses, which are enumerated in § 960(a), is § 955.  Nonetheless, while the 1941 statute criminalizing conduct on the high seas was *repealed* in the Comprehensive Act, *see* Comprehensive Act, Title III, § 1101(a)(2), (9), 84 Stat. 1292, missing from the 1970 statute was any provision *reinstating* the previous prohibition on drug possession on the high seas, *id.* at 500–01.

Recognizing its oversight, *see Olave-Valencia*, 371 F. Supp. 2d at 1231 & n.7 (citing S. Rep. No. 96-855 (1980); H.R. Rep. No. 96-323, at 4–5 (1979)), Congress passed the original version of the MDLEA in 1980. *See Gamboa-Cardenas*, 508 F.3d at 501 (explaining that the 1980 statute was later amended to reflect its current form in 1986 (citing Act of Sept. 15, 1980, Pub. L. No. 96-350, § 1, 94 Stat. 1159, 1160; Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, § 3202, 100 Stat. 3207)).  While the MDLEA was apparently intended to fill the gap left open in 1970 following passage of the Comprehensive Act, the newly enacted MDLEA went further than the original 1941 statute.  In particular, the MDLEA "not only applies to offenses committed on the high seas, but it also covers offenses committed on board United States vessels 'within the customs waters of the United States,' offenses which the 1922 Act (not the 1941 Act) would have historically covered."  *Id.* at 501.  Likewise, importantly, while the original 1941 statute governed "'possession or control on board' a United States vessel," the MDLEA "governs 'possession with intent to manufacture or distribute.'"  *Id.* (quoting the relevant statutory language).  Thus, while the MDLEA applies to conduct on a broader universe of vessels than the 1941 statute, *i.e.*, both to vessels on the high seas subject to United States jurisdiction and to all vessels in jurisdictional waters, the current statute proscribes a narrower set of conduct aboard those vessels.

Reviewing this legislative history, the defendants argue that the enactment of the MDLEA evinces "Congress's intent to punish drug trafficking on the high seas in lockstep with drug trafficking in United States waters."  Chang-Rendon Mem. at 11.  Specifically, the defendants contend that, following the inadvertent exclusion of a replacement for the 1941 statute, Congress enacted the original version of the MDLEA with the intention of "return[ing] to its policy of sentencing parity" between drug crimes committed in United States territorial waters

and similar crimes committed on the high seas. *Id.* at 12.  According to the defendants, aware that offenses under the 1922 and 1941 statutes were previously subject to the same penalties, Congress sought to ensure that offenses under the new MDLEA would be penalized identically to those under the new § 955 by providing that offenses under the MDLEA would be punished "as provided in" § 960. *Id.* at 11–13.  Thereafter, the defendants identify no Congressional intent to treat these offenses differently upon either enacting the mandatory-minimum penalties in § 960(b) or later providing relief from these penalties under the safety-valve provision. *Id.* at 13–15 (likening Congressional silence on this front to the "dog that did not bark" (internal quotations omitted) (citing *Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991))).

As previously discussed, however, by passing the MDLEA, Congress did not merely reenact provisions of the 1941 statute repealed by the 1970 Comprehensive Act.  Instead, the MDLEA altered both the jurisdictional reach of the prior statute and the conduct prohibited under federal law.  These significant substantive changes to the terms of the prior statute largely undermine any inference that Congress intended to subject defendants convicted under the MDLEA to the same penalties as their counterparts convicted under § 955.  On the contrary, as the Ninth Circuit observed, "[i]t is perfectly logical to apply the safety valve to the lesser offense of possession on board a vessel [under § 955], but not to the greater offense of possession on board a vessel with intent to manufacture or distribute [under the MDLEA]." *Gamboa-Cardenas*, 508 F.3d at 502.

Indeed, the defendants' present contention that Congress intended to provide safety-valve relief to qualifying MDLEA defendants is further undermined by Congress's subsequent efforts to clarify the scope of safety-valve relief under § 960.  Two years after adopting the safety-valve provision, Congress amended 18 U.S.C. § 3553(f) to correct a typographical error in the initial

18

statute.  As originally drafted, § 3553(f) provided for safety-valve relief for defendants convicted

of offenses under "section 1010 or 1013 of the Controlled Substances Import and Export Act (21

U.S.C. *961*, 963)."  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322,

§80001, 108 Stat. 1796 (emphasis added).  The 1996 amendment corrected this error, modifying

the language to reflect its current form, which provides for safety-valve relief "in the case of an

offense under . . . section 1010 or 1013 of the Controlled Substances Import and Export Act (21

U.S.C. *960*, 963)."  Economic Espionage Act of 1996, Pub. L. 104-294, § 601(b)(5), 110 Stat.

3448, 3500 (emphasis added).  This effort—two years after the safety-valve provision was

initially adopted and ten years after the MDLEA was amended to reflect its current form—to

correctly cite to the offenses for which safety-valve relief is available, without reference to the

MDLEA, largely refutes the defendants' present contention that the failure to include the

MDLEA among the offenses in § 3553(f) was a mere oversight.  Quite the opposite, even with

the opportunity to consider the precise text at issue here, Congress has declined to include

MDLEA offenses among the enumerated offenses for which safety-valve relief is available or

otherwise made clear that these offense qualify as offenses "under . . . § 960."

Nonetheless, the defendants press that construing the safety-valve provision to apply

equally to § 955 and the MDLEA would avoid the "absurd" result under which MDLEA

defendants are subject to more severe punishment than defendants who commit equivalent

offenses in domestic waters, on land, or in aircrafts subject to United States jurisdiction.  *Id.* at

9–10.  Without question, however, Congress intended the safety-valve provision to apply to

some, but not all, drug offenses subject to mandatory-minimum penalties.  *See Gamboa-*

*Cardenas*, 508 F.3d at 498 (collecting cases finding that safety-valve relief is unavailable for

defendants convicted under 21 U.S.C. § 860).  Moreover, the Court discerns no absurdity in

precluding safety-valve relief for defendants engaged in international drug trafficking.  In fact, in enacting the MDLEA, Congress emphasized the "serious international problem" of international drug trafficking aboard maritime vessels, which "presents a specific threat to the security and societal well-being of the United States."  46 U.S.C. § 70501.  Thus, in addition to the familiar concerns presented by domestic drug trafficking, Congress found that the conduct underlying the charged conspiracy "is a serious international problem, facilitates transnational crime, including drug trafficking, and terrorism, and presents a specific threat to the safety of maritime navigation and the security of the United States."  *Id.*  With this in mind, and absent evidence of Congressional intent to the contrary, the Court concludes that Congress, in passing safety-valve provision, meant what the plain language of the safety valve provision says and did not intend for offenses under the MDLEA to qualify as "offenses under . . . § 960" within the meaning of the 18 U.S.C. § 3553(f).

Finally, to the extent that Congress's precise intent remains unclear, any lingering ambiguity is not so "*grievous*" as to require the Court to adopt the defendants' preferred interpretation under the rule of lenity.  *Burwell*, 690 F.3d at 515.  Indeed, even assuming that the text of § 3553(f) admits of some minor ambiguity, there is little reason to believe that individuals considering whether to engage in drug trafficking on the high seas will be less likely to do so with the knowledge that, upon their capture and successful prosecution in the United States under the MDLEA, they will not be eligible for potential safety-valve relief from the mandatory-minimum sentence that applies under United States law to their offense.

Accordingly, the Court finds that safety-valve relief under § 3553(f) is unavailable to defendants, like the defendants here, who are convicted of conspiring to engage in international maritime drug trafficking in violation of the MDLEA.

>    **3.**    **Alleyne *Does Not Alter the Court's Interpretation of 18 U.S.C. § 3553(f)***

Finally, the defendants contend that prior out-of-circuit decisions addressing the application of the safety-valve provision to MDLEA offenses cannot be squared with the Supreme Court's more recent ruling in *Alleyne*.  Chang-Rendon Mem. at 7–9; Reply Mem. Supp. Def. Moreno-Membache's Legal Eligibility for Safety-Valve Relief ("Moreno-Membache Mem."), ECF No. 202.  In *Alleyne*, the Supreme Court continued its long-running effort to distinguish between those facts that constitute elements of a particular crime and, under the Sixth Amendment, must be found by a jury beyond a reasonable doubt, and those facts that qualify as mere "sentencing factors," which may be considered by the Court without a formal jury finding.  Reversing its earlier holding in *Harris v. United States*, 536 U.S. 545 (2002), the *Alleyne* Court held that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."  *Alleyne*, 133 S. Ct. at 2155.  In particular, because mandatory-minimum sentences imposed by statute increase the minimum penalty for a particular offense, "any fact that increases the mandatory minimum [for a particular offense] is an 'element' [of that offense] that must be submitted to the jury."  *Id.*  Relying on *Alleyne*, the defendants suggest that the drug quantities outlined in subsection (b) of § 960, which dictate whether a defendant is subject to a mandatory-minimum, are elements of the offenses that incorporate the penalties outlined in subsection (b).  Moreno-Membache Mem. at 3; Chang-Rendon Mem. at 8.

The D.C. Circuit has yet to address precisely how *Alleyne* applies where a defendant's participation in a charged drug conspiracy subjects him to a potential mandatory minimum under § 960.  *Compare United States v. Fields*, 251 F.3d 1041, 1043 (D.C. Cir. 2001) ("*Apprendi* . . . applies to sentences predicated on drug quantity where progressively higher statutory maximums

are triggered by findings of progressively higher quantities of drugs.") *with United States v. Woodruff*, No. CR 13-200 (RWR), 2015 WL 5118503, at *3 (D.D.C. Aug. 28, 2015) (noting that the D.C. Circuit has not resolved the question whether "a jury must find that the amount of drugs that triggers a statutory mandatory minimum penalty in a narcotics conspiracy is attributable to the conduct of a convicted conspirator—or is reasonably foreseeable by him or her as the amount involved in the conspiracy—before that amount's penalties are triggered for that conspirator"). In any event, however, the Supreme Court's holding in *Alleyne* is entirely consistent with the Ninth and Eleventh Circuits' prior consideration of the application of the safety-valve provision to the MDLEA. While the *Apprendi* line of cases often distinguishes between "elements" of an offense, which must be found beyond a reasonable doubt by a jury, and "sentencing factors," which may be found by a preponderance of the evidence by a sentencing judge, *Alleyne*, 133 S. Ct. at 2156 (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 86 (1986)), designating a particular factual question as an "element" of an offense requiring a jury determination under the Sixth Amendment has no obvious bearing on the Court's interpretation of 18 U.S.C. § 3553(f).

Indeed, even assuming that the drug quantities identified in § 960(b) constitute elements of an MDLEA offense for purposes of the Sixth Amendment (and thereby must be determined by a jury), it does not follow that a violation of the MDLEA constitutes an "offense . . . under § 960" within the meaning of the safety-valve provision. The defendants' present contention that *Alleyne* governs the Court's interpretation of the safety-valve provision appears to rest on the assumption that, in passing the safety-valve provision in 1994, Congress anticipated the Supreme Court's holding, nineteen years later, that the quantity of drugs involved in an MDLEA offense is an "element" of the offense that must be found by a jury. The defendants point to nothing in

the legislative history suggestive of such an awareness, and the Court declines to infer any such Congressional awareness, let alone intent, from this silence.

In short, *Alleyne* does nothing to call into question the Ninth and Eleventh Circuits' interpretation of § 3553(f)'s reference to § 960 as "invok[ing] the statutes listed in 21 U.S.C. § 960(a)," namely, 21 U.S.C. §§ 952, 953, 955, 957 and 959.  Accordingly, consistent with the reasoning of each of the circuit courts that have considered the issue, as well as the plain language of the statute itself, the Court concludes that an offense defined under the MDLEA does not, by virtue of the fact that it is punished in accordance with 21 U.S.C. § 960(b), qualify as an "offense under . . . § 960" within the meaning of 18 U.S.C. § 3553(f).

## III.    CONCLUSION

For the foregoing reasons, the Court holds that relief from an otherwise applicable mandatory minimum sentence under the safety-valve provision of 18 U.S.C. § 3553(f) is unavailable for defendants convicted under the substantive or conspiracy provisions of the MDLEA.


Date: March 21, 2016


                                        _____
                                        BERYL A. HOWELL
                                        Chief Judge