UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ALFREDO MOSQUERA-MURILLO,
 also known as "Alfredo Lopez-
 Gutierrez,"  and

ANTONIO MORENO-MEMBACHE,

 Defendants.

CRIMINAL NO. 13-cr-134 (BAH)

GOVERNMENT'S OUTLINE OF EVIDENCE FOR
JUNE 12, 2019 EVIDENTIARY HEARING

The United States respectfully submits this Outline of Evidence in response to the

Court's June 6, 2019 Order.  Based on the evidence proffered in this outline and the

corroborating information contained in the attachments, the Court should find that Defendants

Alfredo Mosquera-Murillo and Antonio Moreno-Membache are ineligible for safety-valve relief

based on the role of the Defendants and based on Defendant Moreno-Membache's possession of

a weapon.

I.      PROCEDURAL BACKGROUND

On September 14, 2018, the D.C. Circuit remanded this case for the resentencing of

Defendants Alfredo Mosquera-Murillo ("Mosquera-Murillo), Joaquin Chang-Rendon ("Chang-

Rendon"), and Antonio Moreno-Membache ("Moreno-Membache").  *See United States v.*

*Mosquera-Murillo*, 902 F.3d 285, 292 (D.C. Cir. 2018).  The D.C. Circuit directed the Court to

"consider whether the defendants meet the five remaining safety-valve requirements."  *Id.* at 296.

The Court scheduled an evidentiary hearing for June 6, 2019, regarding whether Defendants Mosquera-Murillo and Moreno-Membache were precluded from safety-valve relief based on their leadership activities as defined under U.S.S.G. § 5C1.2(a)(4) and whether Defendant Moreno-Membache was precluded from safety valve relief based on his possession of a weapon as prescribed by U.S.S.G. § 5C1.2(a)(2).  On May 24, 2019, Defendant Mosquera-Murillo filed a motion *in limine* to exclude the Government's evidence of relevant conduct.  ECF No. 276.  The Government timely responded.  ECF No. 278.  On June 5, 2019, Mosquera-Murillo filed a motion to continue the hearing.  ECF No. 281.

On June 6, 2019, defense counsel for Moreno-Membache alerted the Court and the parties that she suffered a medical emergency and would be unable to appear in court.  Later that day, the Court continued the evidentiary hearing until June 12, 2019.  The Court then ordered the Government to submit "a complete outline of the evidence it intends to submit at the evidentiary hearing for ALFREDO MOSQUERA-MURILLO and ANTONIO MORENO-MEMBACHE, including any corroborating information for that evidence."  Minute Entry, June 6, 2019.  The Court also stated that the outline "must include evidence related to the defendants' supervisory roles in connection with the charged conspiracy and ANTONIO MORENO-MEMBACHE's possession of a weapon in connection with the charged conspiracy, including any relevant conduct on which the government intends to rely."  *Id.*

## II.       THE GOVERNMENT'S EVIDENCE IT INTENDS TO SUBMIT[1]

In April 2010, the Colombian National Police initiated an investigation into cocaine manufacturing and domestic and international drug distribution, which included maritime narcotics trafficking and the sale of naval patrol location information.  During the course of this investigation, the Colombian National Police developed evidence regarding laboratories responsible for cocaine production, individuals responsible for transporting cocaine from the laboratories to stash houses throughout Colombia, individuals responsible for transporting cocaine from the stash houses to go-fast vessel launch sites, and the individuals responsible for the maritime distribution of hundreds of kilograms of cocaine and marijuana through international waters.  This investigation involved a multi-year wiretap, the physical surveillance of identified members of the drug trafficking network, and numerous seizures of drugs throughout Colombia.  Through evidence requested pursuant to Mutual Legal Assistance Treaty, the United States received information from the government of Colombia related to the maritime trafficking portion of the Colombian investigation.  Using evidence obtained during the Colombian investigation, along with evidence collected by United States law enforcement, including but not limited to the testimony of five cooperators arrested in three separate maritime trafficking interdictions involving a total of approximately 1,459 kilograms of cocaine and 335 kilograms of marijuana, the United States was able to indict members of this maritime trafficking organization, including Defendants Mosquera-Murillo and Moreno-Membache.

---

[1] Pursuant to the Court's June 6, 2019 Order, this filing provides an outline of the Government's evidence and is an overview of the evidence that the Government will submit at the upcoming evidentiary hearing.  It does not provide an exclusive list of every matter that Special Agent Souchet will testify regarding in the course of his direct examination.  The Government also reserves the right to introduce additional evidence in response to Defendants' motions, objections, or arguments.

The evidence shows that: (1) Defendant Mosquera-Murillo managed and supervised go-fast vessel crewmembers by devising drug trafficking routes through the Pacific Ocean that evaded law enforcement patrols, oftentimes giving the order to launch the shipment and designing and communicating updated drug trafficking routes in real-time as law enforcement patrols moved; (2) Defendant Mosquera-Murillo had an ownership interest in marijuana being transported aboard the go-fast *Mistby*, and Mosquera-Murillo's management authority over the go-fast crewmembers of the *Mistby* and co-Defendant Chang-Rendon was bolstered as a result of Mosquera-Murillo's known investment in the marijuana; (3) Defendant Moreno-Membache managed and supervised crewmembers tasked with transporting cocaine within Colombia from locations such as Buenaventura to the Choco department for subsequent further distribution, and some of the crews were composed of Moreno-Membache's younger brothers; (4) Defendant Moreno-Membache also managed and supervised go-fast vessel crews responsible for distributing drugs in international waters, including from Colombia to Panama; (5) Defendant Moreno-Membache managed and supervised individuals responsible for storing and guarding cocaine in the Choco department while the drug trafficking organization prepared go-fast vessels for launch; and (6) Defendant Moreno-Membache possessed a pistol during the course of planning the *Mistby* shipment as corroborated by multiple go-fast crewmembers.

a.      **Qualifications of Special Agent John Souchet**

The Government intends to present its evidence through Special Agent John Souchet. Special Agent Souchet is a veteran of numerous international drug trafficking investigations with more than fifteen years experience with the Naval Criminal Intelligence Service.  Special Agent

Souchet served several of these years in Colombia working with the Colombian Navy.  Special Agent Souchet is also fluent in Spanish as a native Spanish speaker.

Special Agent Souchet led the Naval Criminal Intelligence Service's investigation into a scheme by which Colombian drug trafficking organizations obtained information regarding the location of United States and Colombian naval assets in the Pacific Ocean.  As such, Special Agent Souchet became the lead case agent regarding the Naval Criminal Intelligence Service's investigation into Defendant Chang-Rendon.  Through his investigation into Defendant Chang-Rendon, Special Agent Souchet learned of Defendant Chang-Rendon's activities with Defendants Mosquera-Murillo and Moreno-Membache to distribute drugs aboard go-fast vessels traveling from Colombia to Panama between approximately 2011 and 2013.  Special Agent Souchet worked with other agents from the Drug Enforcement Agency and Homeland Security Investigations responsible for investigating the Defendants' roles in the charged conspiracy as well as relevant conduct concerning maritime cocaine trafficking.

In preparation for this hearing, Special Agent John Souchet has reviewed reports of witness interviews, phone calls that were intercepted by the Colombian National Police during their investigation, along with the transcripts and Spanish-English translations of the phone calls, and other Colombian National Police reports on surveillance during the course of the investigation. This evidence provides information pertinent to the leadership structure of the charged conspiracy, including the hierarchy and roles of members of the maritime trafficking organization, including that of Defendants Mosquera-Murillo and Moreno-Membache, as well as information related to the possession of weapons by members of the charged conspiracy, including by Defendant Moreno-Membache. *See generally* Gov't. Exs. 1-15.

### b.  Leadership Structure of the Charged Conspiracy And Cocaine Trafficking Incidents Within the Scope of Relevant Conduct

Based on information that Special Agent Souchet learned in the course of his investigation, Special Agent Souchet will testify that the charged conspiracy was led and organized by individuals such as William Obando-Gonzalez ("Obando-Gonzalez"), who owned the cocaine distributed on the vessel *Mistby*.  Special Agent Souchet will further testify that Obando-Gonzalez relied upon mid-level managers and supervisors such as Defendants Mosquera-Murillo and Moreno-Membache to give orders to lower-level members of the drug trafficking organization.  Pursuant to this role, Defendants Mosquera-Murillo and Moreno-Membache supervised and managed the lower-level members responsible for transporting the cocaine to the Choco department of Colombia, guarding the cocaine while the drug trafficking organization devised a safe maritime trafficking route, and ultimately transporting the cocaine to Panama.

Special Agent Souchet will also testify that Defendants Mosquera-Murillo and Moreno-Membache's leadership activities regarding the charged conspiracy are corroborated by their regular participation in other schemes to transport multi-hundred kilogram shipments of cocaine via go-fast vessel from the Choco department of Colombia to Panama.

### c.  Statements of Co-Conspirators

#### i.  Statements of Luis Eduardo-Paredes

Special Agent Souchet will testify in part based on his review of statements by cooperating defendant Luis Eduardo Paredes ("Paredes"), the captain of the go-fast vessel

*Mistby*.  *See* Gov. Ex. 1.  The Government expects that Special Agent Souchet's testimony regarding Luis Paredes will address the following matters:

Paredes served as the captain of the vessel *Mistby* as it traveled from Colombia to Panama.  According to Paredes, Mosquera-Murillo openly discussed his ownership of the marijuana aboard the *Mistby* in a meeting with Obando-Gonzalez and others.  Mosquera-Murillo also supervised the *Mistby* crew's attempts to avoid law enforcement detection by providing regular updates regarding the location of law enforcement patrols.  Furthermore, Paredes observed Defendant Moreno-Membache giving numerous instructions to lower-level members of the charged conspiracy, including but not limited to orders regarding whether or not to launch the *Mistby* based on the location of law enforcement patrols, whether to conceal the *Mistby* based on the presence of law enforcement patrols near the shore, and how to load the cocaine onto the *Mistby*  prior to its launch.  According to Paredes, Defendant Moreno-Membache had a competitive relationship with his brother and fellow crewmember Andres Moreno-Membache, and this dynamic was apparent in their efforts to supervise and exert control over the younger Moreno-Membache brothers responsible for transporting, safeguarding, and loading the cocaine. Paredes also knew that both Defendant Moreno-Membache and Andres Moreno-Membache possessed firearms during the course of the charged conspiracy.  Paredes saw Defendant Moreno-Membache holding a black 9mm pistol at a planning meeting regarding the *Mistby*, and Paredes was also aware that Andres Moreno-Membache owned a twelve-gauge shotgun and a white 9mm pistol known as "blancita."

### ii.   Statements of Ivan Campaz-Riascos

Special Agent Souchet will testify in part based on his review of statements by cooperating defendant Ivan Campaz-Riascos ("Campaz-Riascos"), a crewmember of the go-fast vessel *Mistby*.  *See* Gov. Ex. 2.  The Government expects that Special Agent Souchet's testimony regarding Ivan Campaz-Riascos will address the following matters:

Campaz-Riascos served as a crewmember of the vessel *Mistby*.  According to Campaz-Riascos, on the day prior to the launch of the *Mistby*, Paredes learned from Defendants Mosquera-Murillo and/or Chang-Rendon that the crew should depart immediately.  This instruction was based on the assessment of military patrol locations obtained by Defendants Mosquera-Murillo and Chang-Rendon.  Campaz-Riascos also stated that Andres Moreno-Membache's brothers were responsible for transporting the cocaine to the coast of Colombia.  Campaz-Riascos observed Defendant Moreno-Membache give orders to the *Mistby* crew, including but not limited to orders regarding whether to delay the *Mistby* shipment based on the location of military patrol vessels and where to store the cocaine aboard the *Mistby*.  On one occasion, Campaz-Riascos saw a concealed pistol tucked into Defendant Moreno-Membache's waistband.

### iii.   Statements of Andres Moreno-Membache

Special Agent Souchet will testify in part based on his review of statements by cooperating defendant Andres Moreno-Membache, a crewmember of the go-fast vessel *Mistby* and younger brother of Defendant Moreno-Membache.  *See* Gov. Ex. 3.  The Government

expects that Special Agent Souchet's testimony regarding Andres Moreno-Membache will address the following matters:

Andres Moreno-Membache served as a crewmember of the vessel *Mistby*. According to Andres Moreno-Membache, Defendant Moreno-Membache recruited him into drug trafficking in approximately 2009.  Afterwards, Andres Moreno-Membache participated in drug trafficking shipments with Defendant Moreno-Membache and their cousin Jimy Gonzalez-Membache ("Gonzalez-Membache").  Andres Moreno-Membache also stated that in preparation for the *Mistby* shipment Andres Moreno-Membache recruited his younger brothers to transport cocaine from Buenaventura to the Choco region of Colombia.  Andres Moreno-Membache further stated that Defendant Moreno-Membache agreed to supervise the younger Membache brothers.[2] Additionally, Andres Moreno-Membache reported that Defendant Mosquera-Murillo owned the marijuana aboard the *Mistby*, and that the marijuana was placed aboard the *Mistby* because some of the cocaine intended for the shipment was seized from a warehouse in Buenaventura.

### d.  Statements Related to Relevant Conduct

#### i.  Statements of Hector Pozmino-Jezken

Special Agent Souchet will testify in part based on his review of statements by cooperating defendant Hector Pozmino-Jezken ("Pozmino-Jezken"), the captain of a go-fast vessel interdicted while traveling to Panama in March 2012.  *See* Gov. Ex. 4.  The Government

---

[2] Andres Moreno-Membache later recanted regarding his brother Defendant Moreno-Membache's role in the *Mistby* shipment.  Special Agent Souchet will testify that he does not find Andres Moreno-Membache's recantation credible.

expects that Special Agent Souchet's testimony regarding Pozmino-Jezken's statements will address the following matters:

According to Pozmino-Jezken, Defendant Mosquera-Murillo, along with go-fast dispatcher FNU LNU, also known as "Orlindo," designed the route his go-fast vessel would take to avoid law enforcement patrols.  Pozmino-Jezken observed Defendant Mosquera-Murillo at a planning meeting prior to the dispatch of the March 2012 shipment, and Defendant Mosquera-Murillo directed the go-fast crewmembers to utilize a particular route by plotting the locations of naval patrols using navigational equipment Defendant Mosquera-Murillo brought to the planning meeting.  According to Pozmino-Jezken, after the shipment departed, Pozmino-Jezken encountered a law enforcement patrol and turned back.  Pozmino-Jezken asked both Defendant Mosquera-Murillo and Orlindo for permission to delay the shipment, but Defendant Mosquera-Murillo and Orlindo both separately instructed Pozmino-Jezken to go out the next day based on an updated route provided by Defendant Mosquera-Murillo.

Pozmino-Jezken also stated that he was familiar with the drug trafficking activities of Defendant Moreno-Membache and his brother Andres Moreno-Membache.  According to Pozmino-Jezken, Defendant Moreno-Membache oversaw go-fast vessel crewmembers transporting drugs north from Colombia through international waters as well as lower-level co-conspirators responsible for moving cocaine from locations in southern and central Colombia, such as Buenaventura, to the Choco department of Colombia.  For example, on one occasion in December 2011, Pozmino-Jezken witnessed Defendant Moreno-Membache direct an at-sea transfer of fifteen kilograms of cocaine from one vessel to another.  Pozmino-Jezken knew that Defendant Moreno-Membache oftentimes hired his younger brothers to transport cocaine within

Colombia.  Additionally, Pozmino-Jezken stated that Defendants Moreno-Membache and

Mosquera-Murillo regularly worked together, and that Defendant Moreno-Membache would rely

on Defendant Mosquera-Murillo to tell him when to depart.

### ii.    Statements of Jimy Gonzalez-Membache

Special Agent Souchet will testify in part based on his review of statements by

cooperating defendant Gonzalez-Membache, a crewmember on the go-fast vessel *La Kokira*

which was interdicted while traveling to Panama in February 2012.  *See* Gov. Ex. 5.  The

Government expects that Special Agent Souchet's testimony regarding Gonzalez-Membache's

statements will address the following matters:

According to Gonzalez-Membache, Defendant Mosquera-Murillo devised the route the

*La Kokira* would take to avoid law enforcement patrols.  Gonzalez-Membache observed

Defendant Mosquera-Murillo attend a coordination meeting prior to the launch of the *La Kokira*.

At the meeting, Defendant Mosquera-Murillo mapped three routes the *La Kokira* could take

through the Pacific Ocean.  Then, after the *La Kokira* departed, the go-fast crewmembers called

Defendant Mosquera-Murillo because they were worried that the chosen route took the vessel

too close to a law enforcement patrol.  Defendant Mosquera-Murillo devised a new route for the

*La Kokira* and instructed the captain of the vessel to follow the new route.  The captain followed

Defendant Mosquera-Murillo's instructions, and the vessel was seized later that day.

Gonzalez-Membache also stated that he was familiar with the drug trafficking operation

of his cousin Defendant Moreno-Membache.  Gonzalez-Membache characterized Defendant

Moreno-Membache as a go-fast vessel dispatcher who hired and paid for his own crews.

According to Gonzalez-Membache, Defendant Moreno-Membache's cocaine trafficking

operation consisted of two crews.  The first crew was responsible for transporting the cocaine to the Choco department of Colombia, and the second crew was responsible for transporting the cocaine to Panama via go-fast vessel.  Gonzalez-Membache also knew that Defendant Moreno-Membache regularly hired his younger brothers to guard the cocaine while it was stored in the Choco region.

### e.   Intercepted Phone Calls

Special Agent Souchet, who is a native Spanish speaker, will also testify based upon his review of phone calls, and their accompanying transcripts and translations, which were lawfully intercepted by the Colombian National Police.

Special Agent Souchet will discuss a series of three phone calls placed on May 12, 2012. *See* Gov. Exs. 6-8.  In these calls, Defendant Moreno-Membache and his brother Andres Moreno-Membache discuss the detention of their younger brothers Ramiro Moreno-Membache, also known as "Porro" ("Porro"), and Faiver Moreno-Membache, also known as "Cholo" ("Cholo"), by law enforcement.  Defendant Moreno-Membache instructs Andres Moreno-Membache that one of the brothers should take responsibility for possession of the cocaine that led to the arrest.  Later that day, Andres Moreno-Membache tells Defendant Moreno-Membache that Andres Moreno-Membache relayed Defendant Moreno-Membache's order to Porro and Cholo, and that Porro ultimately took responsibility for the cocaine.

Special Agent Souchet will also discuss a series of four phone calls placed on May 4, 2012 and May 18, 2012.  *See* Gov. Exs. 9-12.  In two of these phone calls, Andres Moreno-Membache offers to connect Defendant Mosquera-Murillo with a buyer for marijuana owned by Defendant Mosquera-Murillo.  Defendant Mosquera-Murillo then calls Defendant Moreno-

Membache to discuss the proposal.  Two weeks later, Defendant Mosquera-Murillo tells co-conspirator Ivan Ortega-Tello that he has explained to Defendant Chang-Rendon that the *Mistby* shipment needs to be successful because Defendant Mosquera-Murillo has an ownership interest in some of the drugs aboard the *Mistby*.

Special Agent Souchet will also discuss a phone call intercepted on June 18, 2012.  *See* Gov. Ex. 13.  In that phone call, Andres Moreno-Membache tells Obando-Gonzalez that Andres Moreno-Membache is waiting for Defendant Mosquera-Murillo to give the order to depart.

Special Agent Souchet will also discuss a phone call intercepted on July 31, 2011.  *See* Gov. Ex. 14.  In that phone call, Defendant Moreno-Membache tells Andres Moreno-Membache that Defendant Moreno-Membache was owed $60,000 by another drug trafficker.  Special Agent Souchet will explain that a $60,000 drug trafficking debt is consistent with investment in a shipment of cocaine.

Special Agent Souchet will also discuss a phone call intercepted April 23, 2012.  *See* Gov. Ex. 15.  In that phone call, Andres Moreno-Membache tells co-conspirator Nestor Murillo-Vanoy, also known as "Marinero" ("Murillo-Vanoy"), that Murillo-Vanoy should not be traveling unarmed.  Andres Moreno-Membache then instructs Murillo-Vanoy to go to a house and ask the woman there to retrieve "la blanca" from under a wardrobe.  Special Agent Souchet will further testify that the evidence collected in this case suggests that "la blanca" is the white 9mm pistol, "blancita," that Paredes described in his interview with law enforcement.

## CONCLUSION

At the evidentiary hearing, the Government intends to introduce the statements of five witnesses as well as ten intercepted phone calls through Special Agent John Souchet.  These

statements and calls support a finding that Defendants Mosquera-Murillo and Moreno-Membache were managers and supervisors of the charged conspiracy as well as managers and supervisors of drug trafficking ventures within the scope of relevant conduct.   The evidence also supports a finding that Defendant Moreno-Membache possessed a weapon during the charged conspiracy. Based on the preceding evidence, the Court should find that Defendants Mosquera-Murillo and Moreno-Membache are ineligible for safety-valve relief.

<div style="margin-left:40%">

Respectfully submitted,

ARTHUR G. WYATT, Chief

Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice

By:      ___/s/_____
Thomas Johnson
Adrienne Rose
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
145 N Street, N.E
East Wing, Second Floor
Washington, D.C. 20530
(202) 514-0917 (main)

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent via the CM/ECF system, to counsel of record for the defendants, this 10th day of June, 2019.

                            _____/s/_____

                            Thomas Johnson
                            Adrienne Rose
                            Paul Laymon
                            Trial Attorneys
                            Narcotic and Dangerous Drug Section
                            Criminal Division
                            Department of Justice